Coxe, Appellant, *v.* Hazleton City Authority.

Argued November 11, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Henry Thalenfeld,* for appellants.

*Benjamin M. Quigg, Jr.,* with him *John E. Cotsack, J. Earl Langan, William E. Zeiter,* and *Morgan, Lewis & Bockius,* for appellees.

OPINION BY MR. JUSTICE COHEN, March 16, 1965:

This is an appeal from a judgment for defendants in a trespass action in which plaintiffs claimed damages arising from defendants' alleged interference with their right to mine coal admittedly owned by them.

One of the defendants, Hazleton City Authority, maintains reservoirs, dams, and pipe lines upon a certain tract of land, pursuant to a condemnation effected by its predecessor, Hazleton Water Company.[1] Prior to the condemnation the land was owned by plaintiffs' predecessors. An instrument executed in conjunction with the condemnation purported to release to plaintiffs' predecessors the coal rights in the land, in consideration of a reduction in condemnation damages.[2]

---

[1] The viewers' report found that the Water Company had ". . . taken and appropriated to its use Dreck Creek and all other creeks, streams and rivulets of water flowing over, upon or through the lands hereinafter described, together with any and all springs, wells or other waters in, upon and under said hereinafter described lands, together with the right to build, erect and construct ditches, trenches, cisterns, catch basins, dams and reservoirs, the right to sink artesian wells and bore pipes, conduits and pipe lines upon, under and through the said hereinafter described lands for the purpose of collecting, conveying and distributing water by the said Hazleton Water Company; also the right to dig, quarry, take, use and remove stone, earth and other materials from said hereinafter described lands for the building, erection and construction of said ditches, trenches, cisterns, catch basins, dams and reservoirs; also the right to take, appropriate, use and occupy so much of the said hereinafter described lands as may be necessary to build, erect and construct said ditches, trenches, cisterns, catch basins, dams and reservoirs; also the right to take, appropriate, use and occupy the said hereinafter described lands as necessary to preserve from contamination the streams of water or reservoirs from which water is taken from said hereinafter described lands and further to do all things that may be necessary to carry out the plans and purposes of the said Company."

[2] "Now, June 22nd 1916, the Hazleton Water Company and the Wyoming Valley Water Supply Company, lessee, in consideration of the sum of one ($1.00) dollar and the reduction in the amount

Plaintiffs desire to mine coal on or under the condemned land. They and the Authority recognize that contamination of the Authority's water would probably result. We find it unnecessary to reach the question of whether the release has freed plaintiffs from liability for the supposed contamination. The lower court correctly held that plaintiffs have not made out a cause of action in trespass because defendants have in no way prevented them from commencing mining operations.

The lower court found as a fact that "no water facilities of the Authority overlay the coal" and that the coal in question "is located at least one mile away from the nearest reservoir." Plaintiffs do not dispute this finding. Accordingly, this case is not within the rule of *Cochran Coal Company v. Municipal Management Company,* 380 Pa. 397, 110 A. 2d 345 (1955), where a trespass action was permitted against a water authority because its dam and other facilities were constructed on top of plaintiffs' coal and its water was seeping into plaintiffs' mines.[3]

---

of damages found against said Hazleton Water Company in said above proceedings, do hereby release all rights acquired by them by virtue of said proceedings in and to the coal underlying the premises in said proceedings fully described, together with the right to remove the same, and without any liability on the part of any owner or lessee to said Hazleton Water Company and Wyoming Valley Water Supply Company, lessee, their successors and assigns, for any damages that may be done to the surface of the said described premises or any reservoirs, pipe lines or improvements of any kind now constructed or that may be hereafter constructed thereon, by reason of said mining and removal of said coal or any adjoining coal."

[3] In *Cochran* we held that the defendant's conduct was actionable at law in trespass, notwithstanding the statutory procedure regarding the exercise of its power of eminent domain, because it had "virtually" taken plaintiff's property without invoking the statutory procedure.

The lower court further found, and was sustained by the court en banc, that "[a]t no time have defendants, or either of them, erected any physical barriers upon the condemned property, nor have they by any force or threat sought to bar plaintiffs or plaintiffs' predecessors in title from access to the land for any purpose." Plaintiffs contest this finding solely on the basis of the following letter received by them from defendant Authority:

"Gentlemen:

"In your letter of October 24, 1958 you suggested that a meeting of the various parties, concerned in the question of the coal under the surface of the Dreck Creek Watershed be held.

"This meeting was held on March 16th, 1959 and as a result our attorneys have presented their opinion as to the position of the Authority in this matter.

"Their opinion is: 'The Coxe Estate and the Lehigh Valley Coal Company have advised the Authority that they desire to commence mining operations, both deep and strip mining, on the water shed in the vicinity of our Dreck Creek Reservoir. They have stated that they will be unable to carry on such operations in a way which will not pollute the Authority's water supply. No plan for this operation has been submitted to the Sanitary Water Board as required by law.

" 'Dreck Creek and its reservoir is one of the principal sources of the Authority's water supply, and if this is to be destroyed our engineers advise us that it will not be possible for the Authority to continue to serve its present customers.

" 'Under these circumstances we believe that the Authority should not agree to permit the Coxe Estate and the Lehigh Valley Coal Company to mine this area.'

"The Board reviewed the opinion and by proper action adopted it as the position of the Authority."

Plaintiffs have not cited any authority for the proposition that a letter containing veiled threats of interference could constitute a trespass upon the type of property rights plaintiffs are asserting in this case. Even if such authority were found, it would not be applicable here; in our opinion, this letter is nothing more than a refusal by the Authority to acquiesce in the proposed contamination of its waters. As such, it does not prevent the plaintiffs from mining and, therefore, is not actionable. See *Downing v. Baldwin,* 1 S. & R. 298, 303-304 (1815). Actually, the Authority has maintained all along that, if plaintiffs begin mining, the enforcement by the Commonwealth of its statutory laws, to which the letter alludes, will make it unnecessary for the Authority itself to take any action against plaintiffs to protect its waters from contamination. See especially §§310-313 of the Act of June 22, 1937, P. L. 1987, added by Act of May 8, 1945, P. L. 435, §§6-7, 35 P.S. §§691.310-691.313. Of course, we express no opinion as to the applicability of this statute.

Because defendants have not interfered with any right plaintiffs may have to commence mining, plaintiffs have no cause of action in trespass.[4] Accordingly, and for this reason alone, the judgment of the lower court is affirmed.

Judgment affirmed.

Mr. Justice JONES concurs in the result.

---

[4] Plaintiffs have also argued that had they cast their action in assumpsit defendants would be liable for anticipatory breach of contract. Even if plaintiffs had so cast their action, which they did not, we cannot find an unexecuted contractual duty on the part of defendants to give their permission to plaintiffs, upon request, to allow them to mine. The absence of such an undertaking is not surprising, because, as plaintiffs have consistently contended, their claim, if any, is based upon interference with a vested property right in the coal. An undertaking by one party to allow another to exercise what he could exercise without such undertaking is rarely encountered.